A97A2234. BOOTH et al. v. ESSEX INSURANCE COMPANY et al.
(498 SE2d 528)

RUFFIN, Judge.

Kevin Helms, while living and working at Project Adam Community Assistance Corporation, Inc. ("Project Adam"), a residential facility for recovering alcohol and drug addicts, was killed by another resident of the facility. Judith Booth, individually and as administratrix of Helms' estate, filed a wrongful death action against Project Adam. At the time of the murder, Project Adam was insured by Essex Insurance Company. Essex filed the instant declaratory judgment action raising the issue of coverage, and Booth intervened. After a bench trial, the superior court ruled that due to an exclusion in the policy, there was no professional liability insurance coverage because Helms was an employee of the facility whose death arose out of and in the course of his employment.[1] Booth appealed, and for the following reasons, we affirm.

This Court reviews the trial court's finding of fact under the "any

---

[1] The court previously granted partial summary judgment to Essex, ruling that an "assault and battery" exclusion in the policy precluded coverage under all parts of the policy except for the Professional Liability Coverage Part.

evidence" standard. See *Kingston Dev. Co. v. Kenerly*, 132 Ga. App. 346, 348 (1) (208 SE2d 118) (1974); *Pinkerton & Laws Co. v. Atlantis Realty Co.*, 128 Ga. App. 662, 665 (1) (197 SE2d 749) (1973) (clearly erroneous standard set forth in OCGA § 9-11-52 is same as any evidence standard).

The record reveals that Helms first entered Project Adam in May 1991 as a patient/resident. Helms graduated from the program and moved out of the residential facility in February 1992. However, several months later he asked to return. Project Adam allowed him to move back, but since he had graduated from the recovery program, it did not treat him as a "client." Instead, he was given "all the responsibilities that other people had who worked for Project Adam."

From the time of his return to the facility, in April 1992, to the time of his death on July 4, 1992, Helms assumed various work responsibilities. For example, he was a cook for Project Adam, for which he received a $60 reduction in his rent. His duties in this capacity included assisting in the preparation of meals and the grocery lists. He was allowed access to the kitchen, a privilege not afforded mere residents of the facility. In addition, Helms drove the Project Adam van, another privilege or duty afforded only to the Project Adam staff. On the July 4 weekend when Helms was killed, he had the responsibility of overseeing the facility while the other staff members were away. He was in charge of Bernard Christie, his assailant, and another resident who stayed at the facility over the weekend. Helms was required to prepare the meals for himself and the two residents.

Sometime on July 4, while Helms was in the kitchen, Christie stabbed Helms to death with a steak knife. Helms was found on the floor of a closet in the kitchen the next day. On the kitchen counter was a box of chicken; some chicken had been removed from the box. The investigating officer said that it appeared as if Helms or someone was planning to prepare some chicken to eat. Christie admitted to murdering Helms.

In holding there was no coverage, the superior court looked to the policy's exclusionary language that provided that the policy did not apply to "bodily injury to any employee of the INSURED arising out of, and in the course of his employment by the INSURED." In appealing, Booth argued that Helms was (1) not an employee, (2) that his actions did not arise out of employment, and (3) that he was not in the course of employment when he was killed.

The first issue we address is whether any evidence supported the superior court's determination that Helms was an employee of Project Adam. In support of her argument that Helms was not an employee, Booth noted that Helms had no contract of employment with Project Adam, was not listed as an employee on state and

federal quarterly wage reports, and Project Adam had no W-4 forms, W-2 forms, 1099 forms or employment benefit records for him.

"Employment means the existence of the relationship of master and servant. [Cit.] In determining the existence of the relationship, the main consideration is the right of the employer to control the activities of the employee in the employment duties. [Cits.]" *Metro. Life Ins. Co. v. Forsyth*, 122 Ga. App. 463 (177 SE2d 505) (1970). "The main tests are whether the master is granted or assumes the right to control the time, manner, means, and method of executing the work, and whether the master has the right to discharge the servant. [Cits.]" *Housing Auth., City of Cartersville v. Jackson*, 226 Ga. App. 182, 183 (2) (486 SE2d 54) (1997). Another issue to be considered is whether the master receives a benefit from the servant's actions. Id. at 184.

Even though Helms lived at the facility, he was not considered a resident since he had graduated from the program. Helms was more than a mere resident; he cooked and purchased groceries for the residents, drove the Project Adam van to purchase groceries and transport residents and supervised the facility and the residents on occasion. In exchange for these services, which benefited Project Adam, he received compensation: a reduction in his rent. Project Adam controlled what duties Helms performed as well as the manner in which he performed them. Accordingly, there was some evidence to conclude that Helms was an employee under the common law definition of the term.

This is true even though Project Adam did not have a written contract of employment with him, did not have employment tax forms or employment benefit records for him and he was not listed as an employee on state and federal quarterly wage reports. In *Jackson*, supra, this Court ruled that payment of compensation is not mandatory to prove an employer/employee relationship under common law or the Workers' Compensation Act. While compensation is one factor to be considered, it is not dispositive of the issue of whether a person is an employee. *Jackson*, supra at 184. Just as compensation is one factor to consider, the existence or absence of tax forms, wage reports, etc. is relevant in determining the existence of an employer-employee relationship, but is not dispositive of the issue. See id.

In addition, for the policy exclusion to apply, Helms' death had to arise out of his employment. Georgia has adopted the positional risk theory of "arising out of employment." *Nat. Fire Ins. Co. v. Edwards*, 152 Ga. App. 566 (1) (263 SE2d 455) (1979). This theory provides that for an "injury to be compensable it is only necessary for the claimant to prove that his work brought him within range of the danger by requiring his presence in the locale when the peril struck, even

though any other person present would have also been injured irrespective of his employment." Id. at 567. Without doubt, Helms' duties to oversee the Project Adam facility over the July 4 weekend placed him within the range of the danger, i.e., Bernard Christie. Because Helms was responsible for supervising Christie and the Project Adam facility, his job duties placed him in the range of danger under the positional risk theory, so his death arose out of his employment.

The third part of the policy exclusion requires that the injuries Helms sustained occurred within the course of his employment. " 'An injury arises "in the course of" employment when it occurs within the period of the employment, at a place where the employee may be in performance of [the employee's] duties and while [the employee] is fulfilling or doing something incidental to those duties.' " (Emphasis omitted). *South Ga. Timber Co. v. Petty*, 218 Ga. App. 497, 498 (462 SE2d 176) (1995).

Booth argues that there was only circumstantial evidence supporting the superior court's conclusion that Helms was actually in the course of performing his duties as a cook when he was stabbed. Booth maintains that the fact Helms was killed in the kitchen and there was some chicken out on the counter did not mean he was cooking for the facility at the time of his death.

However, if Helms had been a mere resident, he would not have been allowed to go into the kitchen. His *status* as an employee placed him in the kitchen. Helms was performing a dual mission by staying at the facility over the holiday weekend: providing himself a place to stay and supervising the facility and the residents as a benefit to Project Adam. He was within the period of employment at the time of his death. The kitchen was a reasonable place for Helms, the cook, to be to perform his duties for Project Adam. As for the third prong of "in the course of employment," we may never know his exact purpose for being in the kitchen at the time of his death. However, this is of no consequence. If Helms was in the kitchen to cook for the residents, he was fulfilling his duties as cook for Project Adam. If Helms were in the kitchen for a personal reason, he was still performing his duties of overseeing the facility simply by his mere presence. At a minimum, obtaining food for himself was incidental to his duties of overseeing the facility over the holiday weekend. See *Petty*, supra.

In summary, Helms was an employee of Project Adam at the time of his death, and his murder arose out of and in the course of his employment. Given the clear language of the exclusion in the Professional Liability Insurance Coverage Part of Project Adam's insurance policy, Helms' death was not covered under the policy and the trial court did not clearly err in concluding that Helms' death was not covered by the policy.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

546

DECIDED NOVEMBER 6, 1997 —
RECONSIDERATION DENIED MARCH 25, 1998 ▮▮▮▮▮▮▮▮

*Cook, Noell, Tolley & Wiggins, J. Vincent Cook, David A. Webster,* for appellants.

*Alston & Bird, Gerald L. Mize, Jr., Kenneth D. Steele,* for appellees.