A04A0824, A04A0825. MCG HEALTH, INC. v. NELSON et al.;
and vice versa.
(606 SE2d 576)

RUFFIN, Presiding Judge.

Alleging that he received negligent medical treatment, James Gary Nelson sued MCG Health, Inc. ("MCGHI"), the Medical College of Georgia Physicians Practice Group ("PPG"), the Board of Regents of the University System of Georgia d/b/a The Medical College of Georgia ("the Regents"), and several physicians and nurses.[1] Both MCGHI and PPG moved for summary judgment. The trial court denied MCGHI's motion, but granted summary judgment to PPG. We granted MCGHI's application for interlocutory appeal, and, in Case No. A04A0824, MCGHI appeals the trial court's order denying it summary judgment. Nelson cross-appeals in Case No. A04A0825, challenging the trial court's summary judgment ruling as to PPG. For

---

[3] *Dwyer v. McCoy,* 236 Ga. App. 326, 328 (5) (512 SE2d 70) (1999).
[1] Nelson's wife, mother, and stepfather also alleged claims for damages stemming from the medical treatment. For ease of discussion, however, we will refer to the plaintiffs collectively as "Nelson."

reasons that follow, we affirm both rulings.

## Case No. A04A0824

"Summary judgment is appropriate when the evidence, construed most favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law."[2] Viewed in this manner, the record shows that Nelson allegedly received negligent medical treatment while a patient at the Medical College of Georgia Hospital in September 1998. At that time, and prior to July 2000, the Regents operated the hospital through the Medical College of Georgia ("MCG"). On July 1, 2000, however, MCGHI took over operations through a lease agreement with the Regents and began using "The Medical College of Georgia Hospital and Clinics" as a trade name.

Arguing that it did not operate the hospital in September 1998, employ any of the persons involved in Nelson's treatment, or exercise any control over the treatment, MCGHI moved for summary judgment. In response, Nelson conceded that MCGHI did not operate the hospital at the time of treatment or control the actions of his medical providers. He argued, however, that pursuant to the lease agreement with the Regents, MCGHI assumed the hospital's past obligations and liabilities, rendering MCGHI potentially liable for the alleged negligence. The trial court agreed that questions of fact remain as to MCGHI's liability and denied the summary judgment motion. We find no error.

1. As part of the lease transaction, MCGHI and the Regents executed several agreements regarding the parties' rights and obligations. Under the parties' Affiliation Agreement and Amended Master Affiliation Agreement, MCGHI agreed to "assume, and . . . perform and discharge, all of the liabilities and obligations of [the] Regents and MCG (whether to pay money or otherwise) which were incurred or arose in connection with the Leased Facilities or Assets, whether known or unknown, contingent or otherwise." The transfer agreement, which contains similar language, further specifies that MCGHI assumed liabilities "arising before or after the Closing Date or before or after the Transfer Date." And the Agreement as to Assignment and Assumption reiterates that MCGHI "does hereby assume and become obligated and liable for and shall perform and discharge all of [the] Regents' liabilities and obligations under or pursuant to the . . . Assumed Liabilities."

---

[2] *Caswyck JSB, LLC v. Crowe*, 265 Ga. App. 316 (593 SE2d 758) (2004).

On appeal, MCGHI argues that, as a nonparty to these agreements, Nelson lacks standing to enforce such provisions. According to MCGHI, Nelson is not an intended third-party beneficiary of the contracts and thus cannot rely upon the assumption of liabilities language.

In *Gwinnett Hosp. System v. Massey*,[3] we rejected a very similar argument by an entity that began operating a medical facility at some point after the plaintiff allegedly received negligent treatment there. Gwinnett Hospital Systems ("GHS") asserted that it was not a proper party defendant because it had no affiliation with the facility at the time of the alleged tort. The transfer agreement between the former operator and GHS, however, provided that GHS assumed all liabilities of the former operator " 'whether known or unknown, contingent or otherwise,' incurred with regard to existing operations as of the commencement date 'or in the past.' "[4]

As in this case, GHS argued that the plaintiff could not rely upon the assumption of liabilities provision because she was not an intended third-party beneficiary of the transfer agreement. Rejecting this argument, we noted that the plaintiff had alleged a claim "for breach of a medical duty, not for damages resulting from a breach of contract between two other parties, and the action was not brought to enforce a contract."[5] The plaintiff merely recognized that, under the clear terms of the contract, GHS was liable for pre-existing liabilities relating to the operations it took over from the former operator. In other words, GHS took responsibility for its predecessor's torts.[6] And given this assumption of liabilities, the plaintiff was entitled to bring suit directly against GHS.[7]

Based on this same reasoning, MCGHI is not entitled to summary judgment simply because it did not control the hospital's operations in September 1998. MCGHI assumed responsibility for liabilities involving the hospital that arose before or after the July 1, 2000 transfer date, "whether known or unknown, contingent or otherwise." We further note that the assumption of liabilities provisions are not indemnity clauses subjecting MCGHI to suit only if liability is first found against the Regents. Instead, the language constitutes "a straightforward acceptance of liabilities by [MCGHI]."[8] Under these circumstances, Nelson is entitled to pursue this direct

---

[3] 220 Ga. App. 334 (469 SE2d 729) (1996).

[4] Id. at 336.

[5] Id.

[6] See id. at 337.

[7] See id.

[8] Id. In fact, the Affiliation Agreement, Amended Master Affiliation Agreement, and Transfer Agreement have separate indemnity provisions.

action against MCGHI.[9]

2. MCGHI further argues that, even if the assumption of liabilities language permits a direct action, the liability at issue here is specifically excluded from the assumed liabilities. MCGHI notes that, under the agreements, it did not assume any pre-transfer liabilities or obligations that

> are covered under the program of insurance and self-insurance maintained by the Georgia Department of Administrative Services ("DOAS") pursuant to Title 45 of the Official Code of Georgia Annotated, including any obligations or liabilities of [the] Regents and MCG which are required to be paid by the State Tort Claims Trust Fund, the State Authority Liability Trust Fund, the State Employee Broad Form Liability Fund, the State Insurance and Hazard Reserve Fund, or other self-insured funds established and maintained by DOAS for or on behalf of [the] Regents and MCG.

MCGHI, however, has pointed to no evidence — and in fact has presented no argument showing — that the liability in question is covered under such programs of insurance or self-insurance. Instead, it simply claims that OCGA § 50-21-29 (b) limits the Regents' liability to $1,000,000 for a single occurrence and $3,000,000 aggregated per occurrence.

We agree that OCGA § 50-21-29 (b) limits the amount of damages that can be recovered under the Georgia Tort Claims Act.[10] But nothing in that Code section or in any portion of MCGHI's argument establishes that, as a matter of law, MCGHI did not assume the liability at issue here. Accordingly, MCGHI has not shown that it is entitled to summary judgment on this basis.

3. Finally, MCGHI argues that Nelson cannot use the indemnification language in the contracts or the fact that MCGHI purchased liability insurance to avoid summary judgment. As found in Division 1, however, the trial court properly denied MCGHI's summary judgment motion based on the assumption of liabilities language in the various transfer documents. Accordingly, these remaining arguments are moot.

---

[9] See id.
[10] See OCGA § 50-21-20 et seq.

*Case No. A04A0825*

In his cross-appeal, Nelson argues that the trial court erred in granting summary judgment to PPG. According to Nelson, questions of fact remain as to whether PPG is liable for the allegedly negligent medical treatment under a respondeat superior theory based on employer-employee and agency principles. We disagree.

4. The record shows that, at the relevant time, PPG was a nonprofit association "organized to bill and collect from third parties the professional fees generated by medical services rendered by faculty members of the School of Medicine at the Medical College of Georgia." According to Janet Beckum, PPG's vice president, PPG was not a group medical practice and had no involvement in the faculty members' practice of medicine, but merely served "to bill, collect and account for funds collected through . . . faculty billings." Beckum also testified that PPG did not employ any of the physician or nurse defendants in this case. Furthermore, PPG's bylaws specifically state that it does not employ its members and "is not responsible for decisions related to the practice of medicine."[11]

Under OCGA § 51-2-2, "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." The term "employment" has been defined as " 'the existence of the relationship of master and servant.' "[12] In determining whether such relationship exists, the primary consideration

> is the right of the employer to control the activities of the employee in the employment duties. The main tests are whether the master is granted or assumes the right to control the time, manner, means, and method of executing the work, and whether the master has the right to discharge the servant. Another issue to be considered is whether the master receives a benefit from the servant's actions.[13]

Nelson has pointed to no evidence that PPG had the right to control the activities of the medical personnel who allegedly provided him negligent treatment. In fact, the record shows that it had no such control. Beckum testified that PPG had no right to — and did not — control the medical practice of any person who treated Nelson.

---

[11] MCG faculty members who meet certain criteria are members of PPG.

[12] *Booth v. Essex Ins. Co.*, 231 Ga. App. 542, 544 (498 SE2d 528) (1997).

[13] (Citations and punctuation omitted.) Id.

According to Beckum, PPG "had no say" in patient care. Rather, PPG acted as a billing and administrative organization that collected payments for medical services and disbursed funds for the benefit of and at the direction of MCG.

Nelson argues that, because PPG provided many services that an employer offers, questions of fact remain as to whether an employer-employee relationship existed between PPG and its member medical providers. In particular, he cites evidence that PPG billed and collected money for time spent by physicians at the medical school, paid various benefits, insurance premiums, and expenses for physicians, negotiated insurance policies, and collected money used to fund portions of physician salaries. He further notes that PPG maintains medical malpractice insurance for itself.

None of this evidence, however, demonstrates an employer-employee relationship between PPG and the medical providers. Undoubtedly, the money collected by PPG through its billing services was used to fund physician salaries, as well as individual physicians' benefits and business expenses. The salaries, however, were actually *paid* by MCG, and Beckum testified that MCG employed the physicians. Furthermore, PPG funded benefits at the direction of MCG. And the funds were distributed pursuant to budgets prepared by MCG, without any input from PPG, which was not involved in deciding "how the funds [were] spent."

The record shows that PPG had no control over the medical providers' activities and was not their employer. Accordingly, the trial court properly granted PPG summary judgment on Nelson's claims against PPG based on an alleged employer-employee relationship.[14]

5. Nelson also argues that PPG is vicariously liable for the medical providers' negligence based on an agency theory. Under Georgia law, " '[a] principal is responsible for the actions of its agent acting on its behalf within the scope of the agency.' "[15] As in the employer-employee context, however, such liability "is premised on [the] principal's right to control the time and manner of an agent's work."[16] And Nelson has offered no evidence that PPG had any right to control the medical providers' work, undermining his agency claim.

On appeal, Nelson asserts that an agency relationship exists because "the attending doctors clearly authorized PPG to act on their behalf in billing in their names, entering into contracts, collecting and disbursing monies back to them in the nature of salaries,

---

[14] See *Gaskins v. Gaona*, 209 Ga. App. 322, 323 (2) (433 SE2d 408) (1993).

[15] *Fountainhead Dev. Corp. v. Dailey*, 263 Ga. App. 677, 681 (588 SE2d 768) (2003).

[16] *Coldwell Banker Real Estate Corp. v. DeGraft-Hanson*, 266 Ga. App. 23, 25 (1) (596 SE2d 408) (2004). See also *Dix v. Shadeed*, 261 Ga. App. 145, 146 (1) (581 SE2d 747) (2003).

repayment of expenses and payment of employment benefits." This evidence, however, does not demonstrate that PPG controlled the time or manner of the physicians' work. Furthermore, to the extent Nelson contends that PPG acted not as a principal, but as the *doctors' agent*,[17] he cannot avoid summary judgment. In Georgia, "the doctrine of vicarious liability does not make the agent liable for the acts of the principal."[18] Accordingly, the trial court properly granted PPG summary judgment on Nelson's agency-based claims.[19]

*Judgments affirmed. Eldridge and Adams, JJ., concur.*

DECIDED SEPTEMBER 21, 2004 —
RECONSIDERATION DENIED NOVEMBER 12, 2004 — 

*Hull, Towill, Norman, Barrett & Salley, James S. Weston, David E. Hudson, Patrick J. Rice*, for appellant.

*Steven L. Beard*, for appellees.

---

[17] See OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf.").

[18] *Leal v. Hobbs*, 245 Ga. App. 443, 445 (1) (538 SE2d 89) (2000).

[19] Nelson's reliance on two foreign jurisdiction cases is misplaced. In *Univ. of Ala. Health Svcs. Foundation v. Bush*, 638 S2d 794, 802-804 (Ala. 1994), a nonprofit professional corporation that acted, in part, as a billing service was held vicariously liable for the negligence of a doctor. Citing this case, Nelson argues that PPG can be held liable here. In *Bush*, however, it was "clear from the record" that the corporation employed the doctor, and the court did not further address this issue. See id. at 798-799. Similarly, in *Schleier v. Kaiser Foundation Health Plan of the Mid-Atlantic States*, 876 F2d 174, 177-178 (D.C. Cir. 1989), the court found evidence that the defendant insurance company had some ability to control the allegedly negligent doctor's conduct, permitting a vicarious liability finding.