**Mari Louise BRASWELL, Plaintiff,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, et al., Defendants.**

**No. Civ.A.1:04–CV–2583–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 26, 2005.

---

See, also, 369 F.Supp.2d 1362, 2005 WL 1123015.

Julian Hue Henry, Office of J. Hue Henry, Athens, GA, for Mari Louise Braswell.

Joseph C. Chancey, Kelleen Huang Hubbs, Drew Eckl & Farnham, Atlanta, GA, Edward D. Tolley, Cook Noell Tolley Bates & Michael, Athens, GA, for University of Georgia Athletic Association, Inc.

Bryan K. Webb, Office of State Attorney General, Atlanta, GA, for Board of Regents of the University System of Georgia.

## OPINION AND ORDER

THRASH, District Judge.

This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1988. The Plaintiff asserts violations of her rights secured by the First and Fourteenth Amendments to the United States Constitution. It is before the Court on the Defendant University of Georgia Athletic Association, Inc.'s Motion to Dismiss [Doc. 15], and the Defendants Michael F. Adams, Frank Crumley, Damon Evans, and the Board of Regents of the Universi-

ty System of Georgia's Motion to Dismiss [Doc. 16]. The Defendant Athletic Association's motion is GRANTED IN PART and DENIED IN PART. The Defendants Adams, Crumley, Evans, and the Board of Regents' motion is GRANTED IN PART and DENIED IN PART. All claims for monetary damages are dismissed. The Plaintiff's claim for permanent injunctive relief may proceed to a final disposition on the merits by motions for summary judgment or trial.

## I. BACKGROUND

Plaintiff Marilou Braswell was employed by Defendant Board of Regents of the University System of Georgia ("Board of Regents") as the coordinator of the University of Georgia cheerleading program. Defendant Michael F. Adams is the president of the University of Georgia and the chairman of the Board of the Defendant University of Georgia Athletic Association, Inc. (the "Athletic Association"). Defendant Frank Crumley is employed as senior associate athletic director. Defendant Damon Evans was employed as an associate athletic director and is currently athletic director at the University. The Plaintiff alleges that Defendants Crumley and Evans are employees of the Athletic Association. They contend that they are employees of Defendant Board of Regents.

Braswell alleges in her Complaint that she is a Christian. She states in her Complaint that as cheerleading coordinator she permitted and participated in team prayers. She also alleges that her husband, an ordained Christian minister, conducted Bible study classes in their home that were attended by University of Georgia cheerleaders. In 2003, two Jewish cheerleaders complained to the athletic department that Braswell had discriminated against them based on their religion. The two cheerleaders alleged that Braswell used her po-

sition to encourage students to adopt certain religious practices and treated non-Christian cheerleaders unfavorably.

One of the Jewish cheerleaders pursued a formal complaint against Braswell. As a result of this complaint and the University's investigation of it, the University placed Braswell on disciplinary probation. Defendant Evans sent a letter to Braswell dated November 23, 2003, outlining the terms of her probation. The letter stated that:

> In addition, there are to be no more religious overtones in your program. This includes, but is not limited to the following: bible studies, prayers on the list serve, utilizing the name of religious figures which has the potential of eliminating persons of a different faith, etc. It should be noted that further violation of University Policy regarding religious discrimination will subject you to termination.

(Pl.'s Mot. T.R.O., Ex. 32.) The University also accommodated the complaining student by giving her an extra year to cheer and placing her, without a tryout, on the football cheerleading squad.

Braswell vehemently objected to the University's handling of the complaint and the complaining cheerleader. She asked for guidance from the University as to what to say concerning the accommodations made to the complaining cheerleader. Her supervisor, Defendant Crumley, instructed her to say that the accommodation was made at the Athletic Association's directive. Instead, on August 7, 2004, Braswell read a prepared statement to the entire cheerleading squad, including the complaining cheerleader. It read, in its entirety as follows:

> On or about June, 2003, [NAME REDACTED] issued a complaint with the UGA Legal Affairs Department accusing me of religious discrimination against her. It is my position that her accusations are totally without merit. I have retained counsel to investigate the matter and prove my position.
>
> However, because the allegations were made, the UGA Athletic Department has mandated that [NAME REDACTED] be placed, without having to try out, on this squad.
>
> Because this is an ongoing investigation, I will have no further comment regarding this situation at this time, except to say this. From this point forward, we will act in a manner that is consistent with what is the "greater good" for this squad. [NAME REDACTED] is a member of this team and is to be treated like any other member. I will not tolerate any negative action, discussion or comments regarding [NAME REDACTED], as a result of this situation. We will move on with the business of being the best cheer squad that we can be.

(Compl., Ex. A.)

As a result, on August 23, 2004, Defendant Crumley sent a letter to Braswell terminating her employment. (Pl.Mot. TRO., Ex. 46.) In the letter, he advised Braswell that her reading of her prepared statement had violated University policy. (*Id.*) The letter further noted that based on a totality of the circumstances and complaints received by the University, Crumley no longer had confidence in Braswell's ability to exercise the judgment and leadership required of her position. (*Id.*) Braswell appealed her termination to Defendant Evans, who affirmed Crumley's decision.

On September 2, 2004, Braswell filed this action, alleging four constitutional violations: (1) deprivation of free exercise of religion; (2) deprivation of freedom of speech; (3) deprivation of due process of law; and (4) deprivation of equal protection of the laws. On October 14, Braswell moved for injunctive relief in the form of a

temporary restraining order or a temporary injunction. She requested that this Court order the Defendants to reinstate her as coordinator of the University's cheerleading program. Upon reinstatement, she requested that this Court prohibit further deprivation of her rights of freedom of religion and speech and bar enforcement of the University's nondiscrimination policy. The Court heard oral argument on Braswell's motion for a temporary restraining order on December 21, 2004, and verbally denied the motion.

On November 1, Defendants Adams, Crumley, Evans and the Board of Regents moved to dismiss Braswell's claims for failure to state a claim. These Defendants contend that they are immune from monetary liability and that Braswell's claims for injunctive relief fail on the merits. On November 2, the Athletic Association moved to dismiss Braswell's claims as against it.

## II. *MOTION TO DISMISS STANDARD*

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. *DISCUSSION*

### A. *The University of Georgia Athletic Association*

■ Braswell names the University of Georgia Athletic Association as a Defendant. The Athletic Association contends that Braswell fails to state a claim as against it. The Athletic Association maintains that it was not involved, directly or indirectly, in the hiring, probation, termination or any other employment decision involving Braswell. Nor, it argues, is it responsible under a theory of *respondeat superior* for the actions of Adams, Crumley, or Evans.

Braswell's Complaint states that she was employed by the Athletic Association. (Compl., ¶ 8). The Complaint also states that Crumley and Evans were and are employed by the Athletic Association. (*Id.* at ¶¶ 6–7). The Athletic Association's briefs and supporting affidavits reveal that Braswell and the individual Defendants were employees of the Board of Regents of the University of Georgia, not the Athletic Association. (Huckaby Aff. ¶¶ 10, 16–17). For this reason, the Court issued an Order directing Braswell to show cause why the Athletic Association is a proper Defendant to this action. In her response, Braswell asserts that even if neither she nor the individual Defendants are formally listed as employees of the Athletic Association, they are agents of the association, which as principal is liable for the actions of the individual Defendants taken on its behalf. She cites the Court of Appeals of Georgia's recent decision in *MCG Health, Inc. v. Nelson*, 270 Ga.App. 409, 606 S.E.2d 576 (2004), for a restatement and proper application of Georgia law of agency and employment. The Georgia Court of Appeals held that the primary consideration in de-

termining whether an employment relationship exists is "the right of the employer to control the activities of the employee in the employment duties." *Id.*, at 413 (citing *Booth v. Essex Ins. Co.*, 231 Ga. App. 542, 544, 498 S.E.2d 528 (1997)). To test whether such control exists, a court may look to whether the master has the right to control "the time, manner, means, and method of executing the work, and whether the master has the right to discharge the servant." *Id.* (citing *Booth*, 231 Ga.App. at 544, 498 S.E.2d 528). It appears that there are factual issues that cannot be resolved at the motion to dismiss stage where all pleadings are construed in favor of the Plaintiff. The Court's show cause order—although well-intentioned—is not the appropriate procedural vehicle to resolve this issue.

### B. *Eleventh Amendment Immunity*

■ The Eleventh Amendment protects a state from being sued in federal court for monetary damages without its consent. *Manders v. Lee*, 338 F.3d 1304, 1308 n. 8 (11th Cir.2003). Eleventh Amendment immunity can be overcome in two ways: (1) a state may waive its immunity from suit; or (2) Congress may abrogate a state's immunity from suit. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The state of Georgia has neither generally nor specifically waived its immunity from Braswell's claims. Nor has Congress abrogated the states' Eleventh Amendment immunity in actions brought pursuant to 42 U.S.C. § 1983. *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir.1995). Eleventh Amendment immunity extends to bar suits in federal court against state agents and state instrumentalities. *Regents of the University of California v. Doe*, 519 U.S. 425, 427, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *Manders*, 338 F.3d at 1308. The Defendants contend, and Braswell correct-

ly admits, that the Board of Regents and Adams, Crumley and Evans, acting in their official capacities as employees of the University, are state agents. Thus, insofar as these Defendants may properly receive Eleventh Amendment immunity, they may not be held liable for the monetary relief Braswell seeks.

As to the Athletic Association, Braswell tries to have it both ways. She alleges that it is a private entity but that it is acting under color of state law. Of course a purely private entity may not be sued under 42 U.S.C. § 1983. The Athletic Association is predominately a public entity. It is undisputed that the Athletic Association exists solely for the purpose of furthering the policies and goals of the University and the Board of Regents. Its Board of Directors is comprised predominately of University officials and faculty. Its officers are all University officials. The Athletic Association is subject to the oversight, direction and control of the University. Its assets are devoted exclusively to the University's athletic program. The Georgia Supreme Court has held that the records of the Athletic Association are the records of a "public office." *Macon Telegraph Pub. Co. v. Board of Regents of the University System of Georgia*, 256 Ga. 443, 445, 350 S.E.2d 23 (1986). The Athletic Association is entitled to Eleventh Amendment immunity as to the Plaintiff's claims for monetary damages.

### C. *Qualified Immunity*

Braswell also asserts claims against Adams, Crumley, and Evans in their individual capacities. The individual Defendants contend that they are entitled to the defense of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or con-

stitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The purpose underlying qualified immunity is to allow government officials to carry out their duties without the fear of personal liability or harassing litigation. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002). "[A]ll but the plainly incompetent or one who is knowingly violating the federal law" find protection in qualified immunity. *Id.*

The Eleventh Circuit has adopted a two-pronged analysis to determine whether a state employee is entitled to qualified immunity. *See, e.g., Vinyard,* 311 F.3d at 1346–47; *Lee,* 284 F.3d at 1194; *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir. 1988). First, the official must show that he acted within the scope of his discretionary authority when the challenged conduct occurred. *Vinyard,* 311 F.3d at 1346. The individual Defendants are state officials. Adams is employed by the Board of Regents as the president of the University of Georgia. Crumley is employed by the Board of Regents as senior associate athletic director of the University. Evans was employed by the Board of Regents as an associate athletic director and is now employed as athletic director at the University. In this case, Braswell's termination was representative of a standard employment decision at the University, and the Defendants were clearly acting within the scope of their discretionary authority. In fact, Braswell pleads that each of these Defendants was acting within the scope of his employment at all times relevant to this action. (Compl., ¶¶ 5–7). Thus, the Defendants have met their preliminary burden.

Once the defendant official satisfies this initial requirement, the burden shifts to the plaintiff to show that the challenged actions violated the plaintiff's federal rights under clearly established law. This is a two-step process. The court must inquire whether the plaintiff's allegations establish a constitutional violation, *Hope v. Pelzer,* 536 U.S. 730, 736–42, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and whether the right was clearly established at the time of the challenged action. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Lee,* 284 F.3d at 1194. If either of these requirements is not met, the defendant is entitled to qualified immunity.

This case is in a strange procedural posture. The Court has already held that the Plaintiff is not likely to succeed on the merits of her claim. That would suggest that she has not shown a violation of her constitutional rights. However, that ruling was made by the Court considering the entire record before the Court. In ruling on the motion to dismiss, the Court must construe the pleadings in favor of the Plaintiff. In terms of the pleadings, she has alleged a violation of her constitutional rights (although the Court has held that the claim is unlikely to succeed). In addressing the merits of the Plaintiff's claim, the Defendants rely upon affidavits and other materials that are not contained in the pleadings. Although the facts of the case are not generally in dispute, all of the relevant facts necessary for a determination of the merits of her claim are not within the four corners of the pleadings. Therefore, this determination must await a resolution of the merits by summary judgment or trial. This, however, does not end the inquiry with respect to the Defendants' claim of qualified immunity.

The doctrine of qualified immunity originated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Supreme Court held that immu-

nity will be denied only where the official's conduct violated a clearly established federal right. Applying *Harlow*, the Eleventh Circuit held that such rights are clearly established when they have been previously developed in "such a concrete and factually defined context to make it obvious to all reasonable government actors, in the [official's] place that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994). Until recently, in the Eleventh Circuit, the rule was that a plaintiff must show that the federal right in question has been defined by prior cases with "concrete circumstances" and "materially similar" facts. *Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir.2001) (en banc); *Lassiter*, 28 F.3d at 1150.[1] This stringent requirement was satisfied only in the rarest of circumstances, making qualified immunity a "nearly insuperable obstacle" in the Eleventh Circuit. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1249 (11th Cir. 2003).

In *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court rejected the "materially similar" facts test developed by the Eleventh Circuit to determine whether a right is clearly established. The Court relied on its earlier decision in *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), which stated:

> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very

action in question has [not] previously been held unlawful.

*Id.* at 271, 117 S.Ct. 1219. The Court described the "materially similar" facts test as a "rigid gloss on the qualified immunity standard [that] is not consistent with our cases." *Hope*, 536 U.S. at 739, 122 S.Ct. 2508. Rejecting this requirement, the Court restated the standard for determining whether a right is clearly established:

> Our opinion in *Lanier* … makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed in *Lanier*, we expressly rejected a requirement that previous cases be "fundamentally similar" … Accordingly, pursuant to *Lanier*, the salient question that the Court of Appeals ought to have asked is whether the state of the law [at the time of the challenged action] gave respondents fair warning that their alleged treatment of Hope was unconstitutional.

*Id.* at 741, 122 S.Ct. 2508. Thus, the Supreme Court rejected the Eleventh Circuit's "materially similar" facts test in favor of a "fair warning" test.

In the wake of *Hope*, the Eleventh Circuit has given texture to the requirement that an official must have fair warning that his action violates a claimant's rights. In *Vinyard v. Wilson*, 311 F.3d 1340, 1349–55 (11th Cir.2002), the Court of Appeals identified three categories of cases in which the unlawfulness of an official's conduct is deemed clearly established: (1) where specific words in the federal statute or constitutional provision render the law applicable to the challenged conduct; (2) where judicial decisions clearly apply to a wide variety of factual circumstances; and (3)

---

1. The Eleventh Circuit also made qualified immunity unavailable in the "slender category" of cases in which the official's conduct was so obviously at the core of what the federal right prohibits that the unlawfulness of the conduct would be unquestionably apparent to any official. *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997).

where precedents involve materially similar facts. *Id.* at 1350–51. As the first two categories suggest, a plaintiff may overcome the qualified immunity defense without relying on fact-specific case law when a preexisting constitutional rule applies with "obvious clarity" to the conduct in question. *Id.* at 1352.

### a. Free Exercise of Religion

■ Braswell contends that the individual Defendants violated clearly established law by placing unconstitutional restraints on her free exercise of religion. Specifically, she contends that the terms of probation outlined in the letter of November 23, 2003, violated her rights as set forth in *Bishop v. Aronov,* 926 F.2d 1066 (11th Cir.1991). In *Bishop,* the Court of Appeals did distinguish between "in-class" conduct and speech conducted away from the classroom. *Bishop,* 926 F.2d at 1074. Recognizing a public university's interest in its educational mission, the Court of Appeals was more critical of restrictions imposed upon university faculty outside of the classroom. *Id.* The court noted of a professor's after-school meetings that "[t]he University has not suggested that [the plaintiff] cannot organize such meetings, make notice of them on campus, or request University space to conduct them; nor could it so prohibit him." *Id.* at 1076. Braswell contends that this holding applies with "obvious clarity" to the conduct prohibited by her letter of probation. She fails, however, to acknowledge the important caveats that the court in *Bishop* places on this holding. "Tangential to the authority over its curriculum, there lies some authority over the conduct of teachers in and out of the classroom that significantly bears on the curriculum or that gives the appearance of endorsement by the university." *Id.* The court also recognized that the university's interest in curbing such conduct is "most obvious when student complaints suggest apparent coer-

cion." The court held that the terms of the university's memo regarding the professor's after-class meetings did not violate his rights to free speech or free exercise of religion. *Id.* at 1076. The court read the memo to simply require the professor to "disassociate such meetings from his courses" and held that this restriction was both reasonable and constitutional. *Id.*

The lessons of *Bishop* as to walking the First Amendment tightrope do not support Braswell's claim. Rather, the terms of her letter of probation, like the memo in *Bishop,* simply mandate the disentanglement of Braswell's religious activities and the University's cheerleading program. The specific terms imposed upon Braswell neither caused her to do anything that compromised her religious beliefs nor prevented her from doing anything essential to her exercise of religion. *Bishop,* 926 F.2d at 1077. At the very least, it is certain that *Bishop* does not clearly establish that the terms of Braswell's probation were unconstitutional. Consequently, Adams, Crumley and Evans are entitled to qualified immunity as to Braswell's free exercise claim.

### b. Freedom of Speech

■ Braswell contends that the Defendants violated her freedom of speech through two actions: (1) the imposition of unconstitutionally restrictive terms in her letter of probation; and (2) her termination in retaliation for her prepared statement. This Court will discuss these alleged violations in reverse chronological order.

Even since *Hope,* courts have been hesitant to hold that the case-by-case First Amendment retaliation analysis espoused in *Pickering* and *Connick* applies with obvious clarity to a defendant's conduct. *See Collier v. Clayton County Community Service Bd.,* 236 F.Supp.2d 1345, 1369 (N.D.Ga.2002) ("[I]t is clear that the mat-

ter is debatable enough so as to lead to the conclusion that the law was not sufficiently established to alert the defendants that they might have been acting illegally."); *see also Anderson v. Burke County, Ga.,* 239 F.3d 1216, 1222 (11th Cir.2001) ("[O]nly in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights.") (quoting *Hansen v. Soldenwagner,* 19 F.3d 573, 576 (11th Cir.1994)); *Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994). Here, where Braswell was terminated in response to her self-serving, insubordinate and unnecessarily harmful prepared statement, *Pickering* and *Connick* do not apply with "obvious clarity" to preclude her termination. Braswell has failed to cite any Eleventh Circuit or United States Supreme Court case which would have given the Defendants reasonable notice that, taking into consideration the context, content, and forum of Braswell's speech, terminating her would subject the Defendants to section 1983 liability for retaliatory discharge. Consequently, Adams, Crumley and Evans are entitled to qualified immunity as to Braswell's claim of retaliatory discharge. Dismissal of Braswell's First Amendment retaliation claim as against the individual Defendants is proper.

Braswell also contends that the terms of her probation unduly restricted her freedom of speech as outlined in *Bishop.* As discussed above, the terms of the letter of probation simply mandate the disentanglement of Braswell's religious speech and the University's cheerleading program. At the very least, it is certain that *Bishop* does not clearly establish that the terms of Braswell's probation were unconstitutional.

Adams, Crumley and Evans are entitled to qualified immunity as to Braswell's claim that these directives violated her right to free speech.

c. Equal Protection

■ Braswell contends that the Defendants committed gender-based discrimination in applying University policies (specifically and ironically, the University's nondiscrimination policy), thereby violating the Equal Protection clause of the Fourteenth Amendment. In order to assert a claim of gender discrimination, Braswell must demonstrate that her employer treated similarly situated male employees more favorably than they treated her. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). Braswell alleges that head football coach Mark Richt has engaged in similar conduct without adverse disciplinary action. Braswell cannot demonstrate that Richt or any other male employee is a proper comparator. She certainly cannot suggest that she and any male employees were so similarly situated that her employer would have reasonable notice that treating the employees differently would amount to a violation of the Equal Protection clause. As the Equal Protection clause does not apply with obvious clarity to the Defendants' conduct vis-a-vis Braswell and Richt, the individual Defendants are entitled to qualified immunity as to Braswell's equal protection claim.

d. Due Process

■ Braswell contends that she has constitutionally protected rights at stake and that the Defendants abridged these rights without providing due process of law.[2] She alleges that she was disciplined and ultimately terminated pursuant to pol-

---

2. In her response to the Defendants' motions to dismiss, Braswell focuses on a substantive due process claim based on the alleged vagueness of the University's nondiscrimination policies. She does not advance a procedural due process claim. Such a claim would be

icies of which neither she, nor any reasonable person, could have had notice. Braswell cannot and does not demonstrate that the University's nondiscrimination policy is facially vague. "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1429 (11th Cir.1998) (citing *United States v. Gilbert*, 130 F.3d 1458, 1462 (11th Cir. 1997)). The University's policy language effectively mirrors that of Title VII. Nor does Braswell show that the University's policy is unconstitutionally vague as applied. She contends that the disparate application of this policy to University employees reveals its vagueness. But, as discussed in the previous section, Braswell fails to identify any disparate treatment under the policy. As the individual Defendants' conduct does not obviously implicate the Due Process Clause, these Defendants are entitled to qualified immunity.

### E. *Injunctive Relief*

The Board of Regents, the Athletic Association, Adams, Crumley and Evans, in their official capacities, are entitled to Eleventh Amendment immunity. Adams, Crumley and Evans, in their individual capacities, are entitled to qualified immunity. Qualified immunity does not apply to claims for injunctive relief. *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 n. 4

(11th Cir.1995). Thus, the only claims remaining are Braswell's claims for nonmonetary relief, most notably her claim for reinstatement as coordinator of the cheerleading program at the University of Georgia.

The Defendants move to dismiss Braswell's claim for injunctive relief for failure to state a claim upon which relief may be granted. This Court holds that although Braswell fails to demonstrate either a substantial likelihood of success on the merits of her claims or that the applicable federal law applied with obvious clarity to the Defendants' conduct, the Defendants fail to demonstrate that there is no set of facts which, if proven at trial, can support Braswell's claims. Dismissal of Braswell's claims for injunctive relief would be inappropriate at this time.

### IV. *CONCLUSION*

The Defendant University of Georgia Athletic Association, Inc.'s Motion to Dismiss [Doc. 15] is GRANTED IN PART and DENIED IN PART. The Defendants Michael F. Adams, Frank Crumley, Damon Evans, and the Board of Regents of the University System of Georgia's Motion to Dismiss [Doc. 16] is GRANTED IN PART and DENIED IN PART.

---

invalid anyway, as she has no identifiable property interest in her at-will employment

with the University.