A01A2022. WILLIAMS et al. v. PARK WALK APARTMENTS, L.P. et al.

(559 SE2d 169)

MIKELL, Judge.

Marion and Jimmy Williams appeal from the grant of summary judgment to Park Walk Apartments, L.P. d/b/a Park Walk Apartments in this premises liability case. For the reasons set forth below, we affirm.

Our review of the trial court's grant of summary judgment is de novo.[1] To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law.[2] In premises liability cases, the routine issues, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for her personal safety, are generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed.[3]

*Robinson v. Kroger Co.* sets out the elements of a trip and fall case. In order to recover, the plaintiff must prove that (1) the premises owner had actual or constructive knowledge of the hazard; and (2) the plaintiff lacked knowledge of the hazard, despite her exercise of ordinary care, due to actions or conditions within the owner's control. However, the plaintiff's evidentiary burden concerning the second prong is not shouldered until the owner establishes that the plaintiff was negligent, that is, she intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of ordinary care, should have known existed.[4]

Having set forth the guidelines, we turn to the salient facts. Viewed most favorably to the plaintiffs, the evidence shows that at 6:30 a.m. on December 15, 1997, Marion Williams exited her apartment and began walking on the sidewalk to the parking lot. Williams deposed that it was very dark outside, and the lighting was dim. She also testified that it had been sleeting that morning, and the ground and sidewalk were icy. As she left the sidewalk to walk across the grass toward her car, Williams stepped on a sprinkler head. Her left foot slipped into a hole adjacent to the sprinkler, and her right leg went straight up. Williams suffered severe injuries to her ankle, requiring two surgeries.

Williams described the hole in the ground as "pretty deep," deep

---

[1] *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 747 (527 SE2d 36) (1999).

[2] *Gunter v. Patterson Bank*, 247 Ga. App. 555-556 (544 SE2d 735) (2001).

[3] *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997).

[4] Id. at 748-749 (2) (b).

enough for her size ten-and-a-half shoe to fit in. Moreover, Williams testified that a maintenance worker informed her that he was aware of the hole prior to this incident. Additionally, Williams deposed that although she was aware that the lawn was peppered with sprinklers, this was the first time she had ever attempted to cut across the grass, and she did not see the sprinkler head in question because it was too dark. She also testified that she was proceeding carefully due to the weather conditions and that the landlord had not salted the sidewalk, "something that they usually do." However, Williams also admitted that she detoured from the sidewalk in order to reach her car as quickly as possible.

Q. So the morning of the accident you didn't use the sidewalk because you wanted to use the shortcut instead to get to your car?
A. Yeah. If I had had any idea that hole was there, I would have definitely used the sidewalk.

In her affidavit, Williams claims that she elected to step off the sidewalk because it was icy. However, the affidavit contradicts her previous deposition testimony without offering any explanation for the contradiction. Accordingly, Williams's self-contradictory testimony must be construed against her, and we may not consider her testimony that the reason she chose an alternate route to access the parking lot was because the sidewalk was icy.[5]

*Gaydos v. Grupe Real Estate Investors*[6] similarly concerned a plaintiff who tripped and fell when she cut across the lawn of her apartment complex to get to the parking lot instead of using the concrete walkway. Because the plaintiff "voluntarily depart[ed] from the route designated and maintained by the owner/occupier for [her] safety and convenience," we held that any increased risk associated with taking an alternate route imposed upon her a duty to exercise a heightened degree of ordinary care for her own safety.[7] In other words, the plaintiff "assume[d] the risk of those hazards existent in the selected route."[8] We reached the same conclusion in *Farmer v. Wheeler/Kolb Mgmt. Co.*,[9] a case involving a pedestrian who tripped over a concrete bumper as she was maneuvering between a row of parked cars. Because the plaintiff chose to leave the walkway that the premises owner had provided, we held that she assumed the risk

---

[5] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).
[6] 211 Ga. App. 811 (440 SE2d 545) (1994).
[7] Id. at 813.
[8] Id.
[9] 224 Ga. App. 834, 836 (482 SE2d 475) (1997).

of her injuries. Similarly, in *Lowery's Tavern v. Dudukovich*,[10] we held that an invitee who fell into an elevator shaft when he walked into a dark, debris-filled alley instead of using the well-lit, public sidewalk to reach his destination assumed the risk of his injuries.

Williams urges us to follow *Brennan v. Freight Room*,[11] in which we held that evidence of inadequate illumination raised a question of fact as to whether an alternative safe means of egress was accessible to the plaintiff. *Brennan* is inapposite, however, because in that case, there was evidence that both routes of access to a restaurant were hazardous, and the plaintiff chose what appeared to be the safest route. There is no such evidence in this case. Williams testified that she cut across the grass for expedience, not safety reasons. She also admitted that she would have stayed on the sidewalk had she known of the hazards awaiting her in the grass. Under the rule set forth in *Gaydos*, she assumed the risk of her injuries by deviating from the relatively safe path.

This is not a situation in which the plaintiff contends that she was a virtual prisoner in her own apartment.[12] Absent evidence that the route prepared and designated by the landlord for ingress and egress was prohibitively unsafe or inaccessible, allowing liability when the plaintiff takes a shortcut over the grass would require a landlord to ensure that every possible route across his property was safe. This is not required under Georgia law.[13]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 24, 2002.

*Joseph M. Todd*, for appellants.
*Finley & Buckley, Jerald R. Hanks*, for appellees.

---

[10] 234 Ga. App. 687 (507 SE2d 851) (1998).
[11] 226 Ga. App. 531, 534 (2) (487 SE2d 109) (1997).
[12] Compare *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 451 (4) (422 SE2d 305) (1992), with *Hull v. Massachusetts Mut. Life Ins. Co.*, 142 Ga. App. 269 (235 SE2d 601) (1977), and *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189 (210 SE2d 337) (1974).
[13] See *Gaydos v. Grupe Real Estate Investors*, supra.