## A03A1662. CASWYCK JSB, LLC v. CROWE.
### (593 SE2d 758)

RUFFIN, Presiding Judge.

Carmela Crowe sued Caswyck JSB, LLC ("Caswyck") for damages she sustained when she slipped and fell at the Caswyck Apartments, an apartment community owned by Caswyck. The trial court denied Caswyck's motion for summary judgment, and we granted Caswyck's application for interlocutory appeal. For reasons that follow, we affirm.

Summary judgment is appropriate when the evidence, construed most favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[1] Viewed in this manner, the record shows that, on March 7, 2000, Crowe was a tenant at the Caswyck Apartments. That evening, she and her ex-husband, Michael, took their two Rottweiler dogs for a walk in the complex. They picked up Crowe's mail at the community mailboxes, then planned to continue walking around the parking lot that circled the complex. But Crowe, who was six months pregnant at the time, was tired and hungry. Rather than completing the circle, she decided to walk back to her apartment through a breezeway in a nearby building with one of the dogs.

To access the breezeway, Crowe stepped onto a grassy area between the parking lot and the sidewalk leading through the breezeway. Although Crowe testified that the grass and sidewalk appeared to be on the same level, the grassy area actually was raised at that point, and a curb separated the two surfaces. As she stepped from the grass to the sidewalk, Crowe fell from the curb, fracturing her foot.

---

[1] See *Williams v. Park Walk Apts.*, 253 Ga. App. 429 (559 SE2d 169) (2002).

Crowe sued Caswyck, alleging that the curb between the grassy area and the sidewalk was deceptive, defectively designed, and dangerous. Caswyck subsequently moved for summary judgment. It argued that it lacked superior knowledge of the hazard and that Crowe failed to exercise reasonable care for her own safety. The trial court denied Caswyck's motion. We find no error.

To recover following a trip and fall, "the plaintiff must prove that (1) the premises owner had actual or constructive knowledge of the hazard; and (2) the plaintiff lacked knowledge of the hazard, despite her exercise of ordinary care, due to actions or conditions within the owner's control."[2] Before the plaintiff bears the evidentiary burden on the second prong, the property owner must demonstrate "that the plaintiff . . . intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of ordinary care, should have known existed."[3] The routine issues in a premises liability case, such as whether the plaintiff exercised ordinary care, are not subject to summary adjudication unless the evidence is plain and undisputed.[4]

1. Caswyck argues that the evidence shows, as a matter of law, that it lacked superior knowledge of the alleged hazard. We disagree.

Timothy Minton, the Caswyck employee responsible for "making sure that . . . the property is running as safely as possible," admitted that he noticed the allegedly hazardous drop-off between the grassy median and sidewalk during construction of the complex, prior to Crowe's fall.[5] At that point, he was concerned that skateboarders might use the curb for tricks, "then fly into traffic." In contrast, Crowe testified that she had never before walked through the breezeway where she tripped, and she did not see the drop-off before the fall. Moreover, Crowe's expert asserted that, because of the curb's design, a person approaching the breezeway across the grass from the parking lot might "mistakenly believe that the entire grass median and adjacent concrete sidewalk are at the same level." Finally, the evidence shows that no other breezeway in the apartment complex has a similar design in terms of elevation and grading. Under these circumstances, a question of fact remains as to the parties' relative knowledge.[6]

---

[2] Id.

[3] Id.

[4] See id.

[5] Minton testified that he is actually employed by Cannon Company, which apparently forms part of Caswyck JSB, LLC. On appeal, Caswyck characterizes Minton as its "service director."

[6] See *Christensen v. Overseas Partners Capital*, 249 Ga. App. 827, 829-830 (1), (2) (549 SE2d 784) (2001) (questions of fact remained regarding the parties' knowledge of static defect); see also *Moore v. WVL Restaurant*, 255 Ga. App. 762, 764 (566 SE2d 465) (2002)

2. Caswyck also argues that Crowe failed to exercise reasonable care for her own safety by leaving the paved area and crossing the grassy median. Crowe does not dispute that, if she had walked to the end of the apartment building, she could have accessed the sidewalk leading through the breezeway directly from the parking lot. Despite this direct access, she chose to cut across the grass.

Under Georgia law, a claimant who voluntarily departs from designated walkways provided by a premises owner " 'assume[s] the risk of those hazards existent in [her] selected route.' "[7] And any increased risk associated with the alternate route imposes upon the claimant "a duty to exercise a heightened degree of ordinary care for her own safety."[8] As we recently explained in *Williams v. Park Walk Apts.*, in which a tenant stepped into a hole while crossing the grass at her apartment complex:

> [a]bsent evidence that the route prepared and designated by the landlord for ingress and egress was prohibitively unsafe or inaccessible, allowing liability when the plaintiff takes a shortcut over the grass would require a landlord to ensure that every possible route across his property was safe. This is not required under Georgia law.[9]

Crowe recognizes this case law, but argues that it does not control here. She points to the community rules and regulations attached to her lease, which provide that "[e]ntrances, hallways, walks, *lawns* and other public areas shall not be obstructed or used for any purpose other than ingress or egress."[10] According to Crowe, Caswyck specifically authorized her to enter the breezeway by walking on the grassy median. She contends, therefore, that she did not depart from an authorized walkway and, consequently, did not assume the risk of any hazards on her route. Caswyck counters that *Williams* and similar authority demand judgment in its favor.

Undoubtedly, Crowe cut across the grass. One of the primary cases cited by *Williams*, however, explains that the claimant only assumes the risk of hazards in the alternate route "where the conditions do not constitute a hazard when the traversed property is used

---

(questions of fact remained regarding property owner's superior knowledge of ice that caused plaintiff's fall, given fact that plaintiff denied seeing the ice, which "may have been difficult to see"); *Anderson v. Turton Dev.*, 225 Ga. App. 270, 272 (1) (483 SE2d 597) (1997) (question of fact raised as to whether property owner negligently designed and constructed a handicap ramp "in such a fashion as to make it appear to be even with the sidewalk").

[7] *Williams*, supra at 430. See also *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813 (440 SE2d 545) (1994).

[8] *Williams*, supra.

[9] Id. at 431.

[10] (Emphasis supplied.)

for its intended purpose, unless . . . the owner has notice that the unauthorized route is being regularly used improperly."[11] Thus, we must consider the intended purpose and use of the grassy median.

The community rule cited by Crowe at least raises a question of fact as to whether ingress was a purpose of the grassy median. The rule specifically states that "lawns" should not be used for *any* purpose other than "ingress or egress." Furthermore, Crowe presented evidence, through expert testimony, that the design of the curb was deceptive and hazardous. Construed favorably to Crowe, this evidence arguably shows that the grassy median where Crowe fell was hazardous when used for its intended purpose — ingress and egress.[12]

Furthermore, even if Crowe did not use the median as intended, the evidence raises a factual question regarding Caswyck's knowledge that an "unauthorized route [was] being regularly used improperly."[13] Minton testified that, based on the condition of the grass, he knew that tenants accessed various breezeways by crossing the grassy medians bordering the complex parking lot. Because the grass was not worn where Crowe tripped, Minton did not believe that tenants often crossed the median there. Nevertheless, Minton's testimony creates a factual question as to whether Caswyck knew that tenants generally used the grassy medians in front of breezeways in this manner.

Given these circumstances, we agree with the trial court that questions of fact remain regarding the reasonableness of Crowe's actions.[14] Accordingly, the trial court properly denied Caswyck's motion for summary judgment.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JANUARY 27, 2004.

*Hicks, Casey & Barber, Richard C. Foster, Lauren E. Abbate*, for appellant.

*Bach, Carver, Dewberry & McNaull, John C. Bach, Stephany L. Zaic*, for appellee.

---

[11] *Gaydos*, supra at 813; see also *Williams*, supra at 430 (citing *Gaydos*).
[12] See id.
[13] *Gaydos*, supra.
[14] See id.