A05A1212. BRAD BRADFORD REALTY, INC. et al.
v. CALLAWAY.
(624 SE2d 179)

ADAMS, Judge.

After falling outside her son's apartment, Marilyn Virginia Callaway filed a premises liability action against Brad Bradford Realty, Inc. d/b/a Cobblestone Fayette Apartments, and Parkway Fayette, L.P. (collectively "Cobblestone"). After a bench trial, the trial court

entered judgment for Callaway. Cobblestone contends that the court erred in reaching that result.

In reviewing a judgment entered in a bench trial, we construe the evidence in favor of the judgment and the court's factual findings will not be disturbed when supported by any evidence. See *Hosp. Auth. of Houston County v. Bohannon*, 272 Ga. App. 96 (611 SE2d 663) (2005). We owe no deference, however, to the court's legal analysis which is subject to de novo review. See id.

Construed in favor of the judgment, the evidence shows that front doors of the apartments at Cobblestone, including the apartment of Callaway's son, were accessible by means of paved sidewalks and breezeways. But many of the ground-floor units, including Callaway's son's unit, had patio doors located close to the complex parking lots; and Callaway's patio door could clearly be seen from the adjacent parking lot. Callaway's son always used the patio door for ingress and egress to his apartment.

One day, with her husband driving, Callaway came to visit her son, and they parked in the parking lot somewhere between her son's patio door and the sidewalk that led to his front door; her son was standing at his patio door when they arrived. The parking spaces were lined straight out from the curb, so the front bumper of the car was somewhere near the curb. Callaway's husband parked the car and walked no more than a few steps past the curb to the patio door of the ground level unit without incident. Although Callaway had the choice of using the paved concrete sidewalk located some distance to her right and proceeding toward the front door, she decided to go to the patio door by going around the front of the car. She described the next moments this way: "I got out of the car and I walked around the front of the car and I stepped up across his yard. When I stepped across his yard, I stepped in a hole and I went down to the ground."

Callaway and others testified that the hole she stepped in was hidden by pine straw, which the evidence showed had recently been spread by agents of Cobblestone but not tidied up as was customary. Later inspection revealed that the hole she fell in was a cut in the curb, which was added to improve drainage during the construction of the apartment complex in 1992. At that time, a v-notch or curb cut approximately twenty-eight inches long at the top and six inches deep with sloping sides was made in the concrete curb on the edge of the parking lot. Michael Sims of Cobblestone, who had designed dozens of drainage systems, explained that the purpose was to allow rain-water runoff to drain into the parking lot rather than to accumulate on the ground adjacent to the buildings. Although Sims had not designed this v-notch, he testified that this "is exactly the place I would've placed it." He admitted that the v-notch would be a hazard to pedestrians if it had been placed in an area of ingress or egress even

if it was not covered with pine straw, but he explained that "[i]t's not intended for anybody to be walking on the back of that curb. It is not in the path of travel. It is nowhere near even where people should be walking."

But testimony was introduced to show that Cobblestone had actual notice that tenants, guests and Cobblestone employees who were residents were taking shortcuts to their own and this patio door, even through hedges, and that some had added their own stepping stones to facilitate travel between their patio doors and the parking lot. Sims himself admitted that there was such evidence and that, with regard to Callaway's son's unit, there was a worn path where a gap in the bushes was located directly in front of the patio. The gap in the bushes is located less than one parking space to the left of the parking space where the v-notch was cut. The parking spaces are nine feet wide, therefore, Callaway could not have been more than ten feet or so from the cut in the bushes when she fell.

By law, the owner or occupier of premises owes a duty to exercise ordinary care in keeping the approaches and premises safe for invitees. OCGA § 51-3-1. Even so, a property owner is not an insurer of an invitee's safety. See *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (493 SE2d 403) (1997). In premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a property owner or proprietor. *Emory Univ. v. Smith*, 260 Ga. App. 900, 901 (581 SE2d 405) (2003). "The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an *unreasonable risk* of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not." (Emphasis in original.) Id.

Cobblestone makes only two arguments. First it contends that there was no evidence that the v-notch was negligently constructed or maintained. See *Cohen v. Target Corp.*, 256 Ga. App. 91, 92 (567 SE2d 733) (2002). But the trial court was authorized also to conclude that Cobblestone negligently caused the v-notch to be concealed by failing to clean up excessive pine straw that was obscuring the v-notch from view, which caused a hazardous condition.

Second, Cobblestone contends that Callaway assumed the risk by departing from the designated route that it maintained, namely the sidewalk to the breezeway entrance to the unit. The voluntary departure rule set forth in *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813-814 (440 SE2d 545) (1994), provides that a claimant who voluntarily departs from designated walkways must exercise a heightened degree of care for his or her safety and assumes the risk of hazards found on his or her route. But the rule comes with an exception that applies when "the owner has notice that the unauthorized route is being regularly used improperly." Id. at 813. See, e.g.,

*Caswyck JSB, LLC v. Crowe*, 265 Ga. App. 316, 318 (593 SE2d 758) (2004) (factual question raised as to whether landlord knew that an unauthorized route — from a parking lot across grassy medians to a breezeway — was regularly used improperly). In this case, as shown above and as found by the trial court, evidence was presented to support the conclusion that Cobblestone was aware that people were regularly and improperly using the path through the bushes to Callaway's son's patio door.

Although Sims testified that the v-notch was "in a bedded, planted area that is not intended for a path of travel to and from that building," the trial court found that Cobblestone knew that this particular curb was crossed regularly by invitees. Given the short distances involved and our review of pictures of the area, we must conclude that an issue of fact was presented as to whether the place where Callaway fell, including the v-notch, was part of the known path that led to the cut in the bushes in front of Callaway's son's patio door. Furthermore, in addition to the testimonial evidence and the pictures, the trial judge went to the site himself with the consent of the parties. Based on the evidence and his own observations, the trial judge was authorized to conclude that the place where Callaway fell was part of the area being improperly used. We find no clear error in this factual finding. Finally, as the trial court noted, Cobblestone had done nothing to stop or discourage the tenants from using paths, such as this one, that led to ground-floor patio doors.

None of the cases upon which Cobblestone relies address situations where evidence was presented to show that the landlord had knowledge of regular improper use of a path by invitees. Similarly, Cobblestone's reliance on *Williams v. Park Walk Apts.*, 253 Ga. App. 429, 431 (559 SE2d 169) (2002), is misplaced because it cannot be read to, nor does it purport to, eliminate the exception to the rule described in *Gaydos*.

Evidence was presented to support the trial court's ruling that Cobblestone knew or should have known that the v-notch was dangerous when covered with straw, that it failed to take reasonable steps to ensure that its premises and approaches were safe, and that Callaway lacked knowledge of the hazard, despite her exercise of ordinary care, due to actions or conditions within the owner's control. See *Robinson v. Kroger Co.*, 268 Ga. at 748-749 (2) (b).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 15, 2005 —
RECONSIDERATION DENIED DECEMBER 5, 2005 —

*Michael L. Wetzel*, for appellants.

*Dupee & Pearson, Peter J. Pearson, Raymond T. Brooks, Jr.,* for appellee.