A07A2141. WRIGHT et al. v. PIEDMONT PROPERTY OWNERS ASSOCIATION, INC.
(653 SE2d 846)

BLACKBURN, Presiding Judge.

Following a bench trial, Robert and Lisa Wright appeal the permanent injunction requiring them to remove a fence they built around the perimeter of their home in violation of neighborhood restrictive covenants. They argue that the "unrebutted" evidence showed that the Piedmont Property Owners Association, Inc. allowed similar fences to be built elsewhere in the neighborhood and that it was therefore estopped from pursuing the arbitrary removal of their fence. Because some evidence showed the "unrebutted" evidence was not only dissimilar but was also rebutted, we affirm under the "any evidence" rule.

In reviewing a judgment entered in a bench trial, we construe the evidence in favor of the judgment and the court's factual findings will not be disturbed when supported by any evidence. We owe no deference, however, to the court's legal analysis which is subject to de novo review.

(Citation omitted.) *Brad Bradford Realty, Inc. v. Callaway.*[1]

So construed, the evidence shows that Lisa purchased certain residential property in 1999 that, as the parties stipulated, was subject to certain restrictive covenants recorded in 1979 regarding the property in the neighborhood. She later married Robert, who moved into the residence with her.

The 1979 restrictive covenants forbade any property owner from erecting or maintaining any fence without first obtaining approval from a committee of the homeowners association, which was to review the fence plans to ensure the fence was harmonious (in terms of exterior design and general quality) with the existing standards of the neighborhood. Nevertheless, in June 2003, Lisa told her next-door neighbor that she and Robert intended to erect a chain-link fence around the entire perimeter of their property without consulting the committee, as she was certain it would be disapproved. The Wrights soon began that construction without submitting plans or seeking approval from the committee. The next-door neighbor wrote a letter to the neighborhood board objecting to the fence. A committee member called Lisa, demanding that she cease construction of the fence until proper approval was obtained. Lisa responded that she could not stop the construction and that only Robert could do that. When the committee member tried to contact Robert, she was only able to leave a voice mail, to which Robert did not respond. Two committee members followed up with separate letters to the Wrights, each demanding that construction cease.

The Wrights then belatedly submitted fence plans to the committee for approval. Determining that such perimeter fencing did not comport with existing standards in the neighborhood, the committee disapproved the plans. The Wrights completed construction nevertheless, giving rise to the present lawsuit against the Wrights, in which the homeowners association petitioned the court for an injunction (i) prohibiting the Wrights from maintaining the fence and (ii) ordering the Wrights to remove the offending fence. The Wrights defended on the ground that the association had permitted similar offending fences in the neighborhood. Following a bench trial, the court found that the other fences were dissimilar and in any case were

---

[1] *Brad Bradford Realty, Inc. v. Callaway*, 276 Ga. App. 648, 649 (624 SE2d 179) (2005).

not objected to, and therefore ordered that the requested injunction be issued. The Wrights appeal.

1. Robert first argues that the court erred in issuing an injunction against him, as the evidence was undisputed that Lisa was the sole owner of the residence. This argument fails.

Robert is correct that the 1979 restrictive covenants were binding on Lisa as owner of the property. See OCGA § 44-5-39; *Rice v. Lost Mtn. Homeowners Assn.*[2] However, the court was fully authorized to enter an injunction against not only Lisa but also against her agents and against those in active concert or participation with her. See OCGA § 9-11-65 (d) (injunction is binding "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order . . ."). See also *Crane v. Cheeley*[3] (affirming injunction against plaintiff and his agents). Accordingly, at its option, the homeowners association was authorized to name Robert, who acted as Lisa's agent and who actively participated with her in the erection and maintenance of the fence, as a party for injunctive relief and notice purposes. Cf. *Brown v. Thompson*[4] (agent of grantor named as defendant in suit for injunction regarding use of land).

2. In their second enumeration, the Wrights argue that the original petition for an injunction referenced as a source for the restrictive covenants not only the 1979 covenants but also some covenants recorded in 1989, which expressly excluded from their coverage the portion of the neighborhood in which the Wrights' property was located. The Wrights argue that because the evidence showed that only the 1979 covenants applied, no injunction was authorized under a pleading that also referenced the 1989 covenants.

There is no authority for the Wrights' argument. Indeed, focusing on such technicalities of the wording in the pleadings is an anathema to "[t]he basic premise of the [1966] Civil Practice Act[, which] does away with 'issue pleading' and substitutes 'notice pleading.' " *Byrd v. Ford Motor Co.*[5] Here, the Wrights received notice in the petition that the homeowners association intended to enforce the neighborhood restrictive covenants, and the applicable covenants were even expressly referenced. References to other covenants did not destroy the court's authority to enforce the applicable covenants. Moreover, as there were no objections to the introduction of the 1979 covenants (indeed, the Wrights stipulated that the covenants applied to their

---

[2] *Rice v. Lost Mtn. Homeowners Assn.*, 269 Ga. App. 351, 354 (3) (604 SE2d 215) (2004).

[3] *Crane v. Cheeley*, 270 Ga. App. 126, 127 (605 SE2d 824) (2004).

[4] *Brown v. Thompson*, 183 Ga. 495 (188 SE 821) (1936).

[5] *Byrd v. Ford Motor Co.*, 118 Ga. App. 333 (2) (163 SE2d 327) (1968).

residence), the pleadings were amended to conform to the evidence (to the extent such was even necessary). See OCGA § 9-11-15 (b).

3. The Wrights' final enumerations basically challenge the sufficiency of the evidence, contending that the trial court should have more fully weighed the Wrights' "unrebutted" evidence that the homeowners association had allowed other "unapproved" fences. As some evidence supported the trial court's contrary finding, we must affirm.

"[T]he 'any evidence' standard of review applies to nonjury trials of disputed material facts." *Crawford v. Dammann.*[6] When reviewing a homeowners association's decisions, " 'the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.' " *King v. Chism.*[7]

Here, the Wrights challenge the decision to reject their fence on the ground that the decision was arbitrary and capricious since the homeowners association allowed other homeowners to build similar fences without approval from the committee. See *Southland Owners Assn. v. Myles.*[8] However, the homeowners association presented evidence that (i) in the neighborhood, there were no similar perimeter fences, particularly ones extending to the roadway or ones made of the same material, and (ii) in any case, no one had objected to any of the fences identified by the Wrights as unapproved fences. Morever, the homeowners association challenged the Wrights' evidence that the other fences were unapproved, as the only basis for that evidence was the Wrights' inability to find such approvals in the homeowners association records, which records were incomplete and did not necessarily include all approvals. And further evidence showed that one of the other "similar" fences was on a property not subject to the covenants.

Accordingly, evidence supported the trial court's conclusion that the other fences identified by the Wrights as "unapproved" were dissimilar. Moreover, in light of the evidence that no one had previously objected to these other fences erected in the neighborhood, the trial court properly held there was no waiver or estoppel. See *Byrd v. Wylly Island Homeowners' Assn.;*[9] *Bryan v. MBC Partners.*[10] Accord-

---

[6] *Crawford v. Dammann,* 277 Ga. App. 442, 444 (1) (626 SE2d 632) (2006).
[7] *King v. Chism,* 279 Ga. App. 712, 716 (3) (632 SE2d 463) (2006).
[8] *Southland Owners Assn. v. Myles,* 252 Ga. App. 522, 523-524 (1) (555 SE2d 530) (2001).
[9] *Byrd v. Wylly Island Homeowners' Assn.,* 277 Ga. App. 218, 220 (2) (626 SE2d 126) (2006).
[10] *Bryan v. MBC Partners,* 246 Ga. App. 549, 551 (1) (541 SE2d 124) (2000).

ingly, evidence supported the trial court's finding that the committee's decision rejecting approval of the Wrights' fence was reasonable and was not arbitrary and capricious.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED NOVEMBER 6, 2007.

*William J. Mason*, for appellants.
*Waldrep, Mullin & Callahan, Neal J. Callahan*, for appellee.